By the Court, Robertson, Ch. J.
The plaintiffs claim that the exceptions in the policy in this case, of injury by ice to the vessel, containing the subject of insurance from the enumerated perils insured against, did not apply to it, while it was being towed from place to place in the harbor of New York, as permitted by the policy. And they base such claim on the argument that both the enumeration of such perils and such exceptions therefrom, are only applicable while the vessel was either on some voyage or trip, or lying at the wharf, (towing from place to place in a har.bor being neither,) and that, being so inapplicable, the policy operated as a general contract of insurance against all perils usually insured against, upon vessels 'or their cargoes on the water, by .mere force of the words, “ do insure.” The defendants, on the other hand, contend that the words, “on said trip or voyage,” refer to the toiving previously spoken of, and, therefore, the injury to the vessel by ice, while being so towed, came directly within the exception of perils from those enumerated as being those against which the insurance was made.
I am compelled to differ with the learned counsel for the parties somewhat, as to both positions taken by them, notwithstanding the ingenious reasoning by which they were sustained, as well as from the reasoning of the learned referee, in the opinion accompanying his report. I would find it difficult .to arrive at the conclusions that the general expression of towing a vessel about a harbor is either navigating it, within the meaning of the policy, or a trip or voyage, according to the received meaning of those words. But in this case the towing was not made the main predicament in which the vessel was to be, while insured, but,, if any thing, it was rather to be while lying at the wharf. It was, in terms. and in fact, an exceptional permission to change the location of the subject insured, without vitia *480 ting.the insurance, and required the written consent of the company before such change could be made, unless the-two clauses are irreconcilable, and the written is to control the printed. An insurance of the cargo of a vessel on a voyage, which was not to be undertaken without the written consent of the underwriters, would be either a nullity, or, at most, a mere proposal for a contract. But it would not be so in regard to merely occasionally towing a vessel insured for some fixed period, as in this case. The terms, “navigation,” “ navigating,” “ voyage or trip,” in this form- of policy, are evidently intended for vessels which are in the course of being propelled from one port to another, and while the printed part of it seems to be adapted to a vessel, either while on such a voyage, or lying at a wharf to be discharged, the greater portion of its stipulations referring rather to the former. I do not see, therefore, any peculiar fitness in terming it a port policy only. The introduction of the written clause in the one in question, undoubtedly confined the perils insured against to those while the vessel was in port, and thus modified the more extensive ones embraced in the printed part of the policy, and rendered many of its stipulations superfluous.
The mere failure, however, to describe any voyage or trip in the policy, within the meaning of those words, as used in it, could not alone render the enumeration of perils insured against, and the exception therefrom of injury by ice, inapplicable to the vessel in question while being towed. The words “on said voyage or trip ” maybe rejected as surplusage, except so far as they tend to explain the meaning of the alternative phrase, “ or while lying up as aforesaid,” and still the defendants be protected by the exception. The object of the policy was evidently to insure the cargo in question while in the port of Hew York. The entire phrase, “ on said trip or voyage, or while lying up, as aforesaid,” by making such conditions as the only alternatives, evidently meant to comprehend every possible condition in which the vessel containing the-subject of *481 insurance could be placed while in that port. She was either to be.engaged in navigation or laid up. The meaning of the word lying, as used in the enumeration of the perils, is not necessarily confined to mere inertness of position, joined, as it is, with the proposition “ up,” but embraces the idea of a change from a prior state of activity to one of repose. In this case it meant a cessation of active ¿navigation, malting trips or voyages from port to port. The vessel in question did not cease to lie up whenever she was towed from place to place in the harbor, any more than if she. lay at .the wharf; lthough, for greater caution, the privilege of towing was expressly reserved. At all events the two conditions were not irreconcilable. She ceased to be in active^ service as a vessel capable of being navigated, and was kept as a mere floating warehouse, or receptacle for merchandise, to be towed or transported while afloat by external power, but even then only with the defendants permission. The words “as aforesaid’’ also included not only lying up while at a wharf, but also while being towed about the harbor. I conclude, therefore, that the vessel was injured by the excepted peril, ice, while she vyas 11 lying up, as aforesaid,” within the meaning of the policy, and that, therefore, the defendants were properly held not to be liable.
The difficulty with the position taken on behalf of the plaintiffs, is that they can only succeed by establishing that, as matter of fact, a vessel, while being towed, was neither making a trip or voyage nor lying up, within the meaning. of the policy, but in a predicament to which neither description would apply—that of being towed—and that, as matter of law, the previous general words of insurance insured against all perils usually insured against on the water. I have already dealt with the first, and the last is not sustained by any authority or writer, English or American, on the subject of insurance. On the continent of Europe, where the civil law or its modifications prevail, usage or positive enactment has defined all the perils insured against, *482 and there is no need of inserting them in a policy. But I have not been able to find any authority that, in Great Britain and this country, claims that any perils are insured against other than those enumerated in the policy, and any necessarily or usually consequential ones.
The judgment must, therefore, be affirmed, with costs.